IN RE ESTATE OF VIRGIL L. RATHE. CLYDE E. LESOING, APPELLEE, V. MARTIN DIRKS, ADMINISTRATOR, APPELLANT.

59 N. W. 2d 164

Filed June 12, 1953. No. 33340.

*Davis, Healey, Davies & Wilson* and *Raymond B. Morrissey,* for appellant.

*Jack M. Pace* and *Dwight C. Perkins,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This appeal is brought by Clyde E. Lesoing and involves permission to file a belated claim in the administration proceedings of the estate of Virgil L. Rathe, deceased, pending in the county court of Johnson County. The claim is for damages alleged to be due to the negligence of Virgil L. Rathe during his lifetime resulting in personal injuries to the claimant when the automobile owned and operated by Virgil L. Rathe collided with the automobile driven by Clyde E. Lesoing, with his wife Josephine Lesoing as a passenger. The county court disallowed the filing of the claim. The claimant appealed to the district court. After hearing on the claim, the district court, upon motions of the claimant and the administrator of the estate for summary judgments, entered judgment in favor of the claimant. The administrator of the estate perfected appeal to this court.

The record discloses that proceedings to administer the estate of Virgil L. Rathe, who died intestate on or about December 10, 1951, were begun in the county court of Johnson County December 18, 1951. Letters of administration were issued to Martin Dirks January 7, 1952, who qualified in that capacity. On the same day an order for notice to creditors was issued that all claims against the estate must be on file on or before May 7, 1952, or be forever barred. Hearing on the claims was set for May 8, 1952. Notice was properly published as provided by law, and proof of publication made. An order barring claims was entered May 8, 1952. The administrator filed a petition for final settlement of the account which was set for hearing on June 2, 1952. On May 24, 1952, the claimant filed an application to file his claim, to fix a date for hearing thereon, and to continue the hearing upon the administrator's final account until disposition of the claim.

This application contains several allegations as to the manner in which the claim arose, the effort made to ascertain the facts relative to the residence of the deceased, and the diligence asserted by claimant to progress his

claim. We will more fully cover this matter in a summary of the claimant's petition on appeal. The matter was heard in the county court on June 25, 1952. On August 12, 1952, the county court disallowed the claim and continued the hearing on the administrator's final report to September 15, 1952. Notice of appeal to the district court was filed September 3, 1952.

The petition on appeal was filed September 16, 1952. Insofar as necessary to be considered here, this petition alleged in substance that claimant was a resident of Hickman, Nebraska; that on December 10, 1951, he was driving his automobile, with his wife Josephine as a passenger, in a northeasterly direction on U. S. Highway No. 77 at a point just south of Cortland in Gage County; and that at that time and place decedent was driving his automobile in a southerly direction on the same highway and negligently, carelessly, and recklessly drove his automobile into and upon the claimant's automobile causing injuries and damages. The petition detailed the elements of negligence charged to Virgil L. Rathe, the injuries received, and the resulting damages which need not be set forth. The petition further alleged that decedent's death coincided with the accident of December 10, 1951, and related the proceedings had in the estate matter in the county court of Johnson County heretofore summarized; further alleged that the claimant, or his agents or representatives, did not have any knowledge or notice of any of the said proceedings or published notices in connection therewith, nor did they, or any of them, know or come into possession of facts which could be calculated to put a reasonable person upon inquiry until after the said order of May 8, 1952, barring claims had been entered; that lack of knowledge was due to mistake and accident, and not to inexcusable neglect; that claimant was not acquainted with decedent or any members of his immediate family; that claimant had been a lifelong resident of Hickman, Lancaster County, and vicinity, and did know in a gen-

eral way the Rathe family name and knew and believed that the Rathes lived for many years in and around and participated in community affairs of Adams in Gage County; that after the accident claimant learned from newspaper accounts of the accident and by inquiry that decedent resided on his father's farm located near Adams, and by reason of the foregoing, the claimant believed that the decedent at the time of his death was a resident of Gage County; that in truth and in fact the farm upon which the decedent resided is about 2½ miles northeast of Adams, and, although situated in Johnson County, its west boundary joins Gage County on the east; that a few days after the accident the claimant employed counsel to make claim for damages and was informed by counsel that such action must be commenced by filing a claim in the estate proceedings when the estate was filed; that counsel was instructed to learn of the time of the filing of the estate and to file a claim at the proper time; and that thereafter inquiries were diligently made, but due to mistake of fact, that is, the location of the decedent's residence, the inquiries were directed to the county court of Gage County as follows: January 16, 1952, long distance telephone call, February 8, 1952, inquiry in person, March 18, 1952, inquiry by mail, and March 28, 1952, inquiry by mail. The petition further alleged that the response to each inquiry was that no estate proceedings had been filed in Gage County; and that on March 28, 1952, claimant made further attempt to perfect his claim by filing a petition for the appointment of an administrator of the estate of the decedent in the county court of Gage County as a creditor, alleging the decedent to be a resident of that county. Notice was duly published in a legal newspaper of Gage County, and an administrator was appointed. Commencing on April 28, 1952, notice to creditors was duly published in Gage County, and not until May 16, 1952, 8 days after the order of the county court of Johnson County barring claims, did the claimant's counsel learn, and

then by accident while discussing another matter of business with an insurance adjuster, that an estate might be pending in Johnson County. A long distance call was made to the county judge's office in said county and the true facts were learned for the first time. It was then too late to file a claim without leave of court. On May 24, 1952, application was made in said county for additional time in which to file the claim. The petition further alleged that claimant's failure to file the claim during the period allowed therefor was entirely without fault on his part and due to mistake of fact as to the location of decedent's residence, which was a reasonable and natural mistake due to the proximity of the decedent's residence to Gage County and the association of the name of Rathe in the claimant's mind with the town of Adams; that claimant did not know facts which would challenge his attention to the actual situation; that said failure was not due to inexcusable neglect for the reason that the claimant exercised the greatest diligence in attempting to prosecute his claim which went for naught by reason of mistake of fact which had been made by claimant; that 3 months had not elapsed from May 7, 1952, the last day for filing claims, at the time the application for additional time was filed; and that final hearing had not yet been had. The prayer of the petition was for additional time for filing and determination of the claim, for setting a date for hearing, to continue the administrator's application for final account until disposition of the claim, and for such equitable relief as might be necessary.

The answer and objections in the county court to the application of claimant to file his belated claim admitted the occurrence of the accident on the highway as alleged by the claimant and that decedent's death coincided with the accident; set forth the proceedings in the county court of Johnson County; admitted that Virgil L. Rathe resided in Johnson County; and denied all allegations in the application not admitted. The answer

alleged in addition that the automobile driven by the decedent at the time of the accident was a 1951 Chevrolet two-door automobile registered in Johnson County, the license being issued by the county treasurer and designated 1951 license JN 105 C; that the license number was recorded on the state accident report made by the investigating officer and filed with the state and constituted a public record of the state; that the driver's license issued to Virgil L. Rathe, No. G 57-774, indicated upon its face that it was issued in Johnson County to a resident of that county; that the heirs of decedent resided at all times in Johnson County; that the residence of the decedent was at all times open, notorious, and located in Johnson County; that the insurance carrier of the automobile coverage carried by the claimant determined the residence of Virgil L. Rathe to be in Johnson County; that the file of the insurance carrier, the Western Mutual Insurance Company, was open and available for inspection by the claimant; that said investigators knew Johnson County was the residence of the decedent; that no inquiry was made of the heirs or relatives of the decedent as to his residence; that had such inquiry been made the investigators would have informed the claimant and he would have known Johnson County to be the residence of the decedent; that claimant did not use due diligence to determine the residence of Virgil L. Rathe at the time of his death; and that had diligent search been made said fact could have been determined by the claimant or his representative. The prayer was to deny the application, that hearing be held forthwith upon the final account of the administrator, and that he be discharged.

The administrator of the estate, in support of a motion for summary judgment, presented the following affidavits:

Affidavit by E. G. Ned Maxwell. the sheriff of Gage County, who, on December 10, 1951, in the course of his duty made an investigation and filed with the De-

partment of Roads and Irrigation of this state an investigator's traffic accident report on December 12, 1951. This report showed the registration number of Virgil L. Rathe's vehicle in Nebraska to be 1951 license No. JH 105 C, and the driver's license, No. G 57-774, to be issued to Virgil L. Rathe, showing place of issuance as Johnson County.

The affidavit of Paul D. Turner was to the effect that on or about December 10, 1951, he was an adjuster for the Farmers Mutual Automobile Insurance Company of Madison, Wisconsin, which insured Clyde Lesoing from liability arising out of an automobile accident. In the course of his duties as an adjuster he investigated an automobile accident involving the claimant and Virgil L. Rathe, deceased, which occurred on December 10, 1951. In the course of the investigation, during December 1951, he called on the father and brother of the decedent at the home of the decedent. He also talked to an attorney of Tecumseh, Johnson County, regarding the estate proceedings in Johnson County for the decedent. This was during December 1951, or January 1952. He examined a map of Johnson County which showed the place of residence of Virgil L. Rathe, deceased, as in that county. Between the date of the accident and May 1952, no inquiry was made of him by the claimant or his representative as to the residence of decedent.

William Rathe, the father of Virgil L. Rathe, deceased, resided on the same farm as the decedent, as shown by his affidavit. At no time between December 10, 1951, and May 1952, did the claimant or his representative contact him at his farm home personally, or by telephone, except Paul D. Turner, a representative of the claimant's insurance carrier who did talk to him during said time. He described the farm as being 2½ miles northeast of Adams, Nebraska.

The claimant offered the affidavit of Clyde E. Lesoing in which the affiant stated he was never informed by

Paul D. Turner, whom he believed to be an adjuster for the Farmers Mutual Automobile Insurance Company of Madison, Wisconsin, that the decedent was a resident of Johnson County, nor was he informed by Turner of the estate proceedings pending in Johnson County for decedent. He was never informed by Ned Maxwell, the sheriff of Gage County, about decedent's automobile being registered in Johnson County, or the driver's license issued to decedent as being issued in Johnson County. He never saw a copy of the investigator's traffic accident report filed by Ned Maxwell, he never saw the automobile being driven by the decedent on December 10, 1951, under circumstances whereby he was able to observe the motor vehicle license plates thereon, and never saw the license plates on this vehicle.

Josephine Lesoing, the wife of this claimant, made an affidavit to the same effect as her husband.

Both the claimant's counsel and counsel for the estate moved for a summary judgment. The trial court sustained the claimant's motion. On this matter of summary judgment, both parties having moved for the same, the court was obligated to determine to which of said parties a summary judgment should be awarded.

The administrator of the estate assigns as error the following: The district court erred in sustaining the claimant's motion for a summary judgment and in denying the estate's motion for a summary judgment. The district court erred in finding that the claimant did show good cause to file the claim.

The applicable statute is section 30-605, R. R. S. 1943, which provides: "Any creditor who has failed to present his claim within the time allowed, may, within three months after the expiration of such time, apply to the court for additional time for the filing and determination of his claim, and the court may, for good cause shown, allow such further time not exceeding three months, but notice of the time and place for the hearing on claims thus filed within the additional time shall

be given to all parties interested as prescribed in section 30-601."

In the instant case the application to file belated claim was made within 3 months from the last day for hearing on claims and from the rendering of the order barring claims.

In the cases of Nebraska Wesleyan University v. Bowen, 73 Neb. 598, 103 N. W. 275, Estate of Fitzgerald v. First Nat. Bank, 64 Neb. 260, 89 N. W. 813, and Burling v. Estate of Allvord, 77 Neb. 861, 110 N. W. 683, 8 months, 8 months, and almost 2 years, respectively, had elapsed after the time limited by the proper probate court for filing claims had expired. Relief was not sought, and under the facts in each case could not have been sustained, under the controlling statute in the instant case. However, the statute here involved has had a long history and has always required that good cause be shown to file the belated claim.

In In re Estate of Golden, 120 Neb. 226, 231 N. W. 833, which we cite for the reason that the principles of law announced therein are applicable here, the claimants were required by a formal order to present their claims within 3 months from March 22, 1928. On June 26, 1928, decree barring claims was entered. On September 12, 1928, certain merchants applied to the county court for permission to file their claim. This permission was granted on January 8, 1929. Finally the district court on appeal denied their application for permission to file the claim. An appeal was taken to this court. The court said: "The sufficiency of the showing by claimants is the controlling question. The jurisdiction of the county judge to permit the filing of a belated claim depends upon good cause shown. In absence of such a showing he has no discretion to grant such permission. In re Estate of Hoferer, 116 Neb. 254. The showing of good cause should be analogous to that required by a court of equity in granting a new trial in an ordinary case." The court also said: "The claim

against the solvent estate makes a strong appeal to morality, equity and justice, but the arbitrary bar of the nonclaim statute and the peremptory order of the county court pursuant thereto apply alike to just and unjust claims." The district court's order denying permission to file the claim was affirmed.

In re Estate of Yetter, 125 Neb. 763, 252 N. W. 202, made reference to section 30-605, Comp. St. 1929, now section 30-605, R. R. S. 1943, the statute being analogous to the present statute. In this case the claimant knew of the death of Albert O. Yetter, but did not know of any probate proceedings having been begun to administer his estate. Certain representations were made with reference to the filing of the claim by a third party, who was not authorized to represent the executrix of the estate, to the effect that no probate proceedings had been commenced. The promise by the executrix to a claimant before expiration of the time of filing claims that she would make a payment on his claim against her deceased husband at a time after the time had passed for filing claims was held not to be such a statement as to excuse the claimant for not filing his claim in proper time. Following In re Estate of Golden, *supra,* it was held there was no evidence of fraud, accident, mistake, unavoidable misfortune, excusable neglect, or diligence.

In re Estate of Tucker, 128 Neb. 387, 258 N. W. 645, is relied upon by the claimant and also by the administrator of the estate. In this case the court held: "'Good cause,' as employed in our statute of nonclaim, is not definitely defined therein, and the proper interpretation and application thereof must depend upon the circumstances of each case and be determined by the court in the proper exercise of a sound judicial discretion." In this case the claimant was unaware of the decedent's death, and claimant's lack of knowledge of the proceedings to administer the estate of the deceased was not due to lack of diligence. The claimant relies on the following language contained in the cited case:

"It is also to be noted that usually, where a statute directs that a court may do a thing on 'good cause' shown, irrespective of the connection, the force of this language thus employed is to vest in the tribunal to which directed a judicial discretion in the matter or thing to which it relates." Cases are cited. And claimant also relies on language to the effect that it is quite evident from the consideration of these cases, arising under statutes relating to different subjects, in which the words "good cause" are incorporated, and wherein that which constitutes "good cause" is not stated nor definitely defined, the proper application thereof must depend on the circumstances of each case, and be determined by the sound discretion of the court. But such cases require the exercise of a proper judicial discretion.

In an appeal to this court where the county court denied the claim and the district court sustained permission to file it, this court has a right to pass upon the question under the statute as to whether or not good cause was shown for permission to file the belated claim.

We have set forth in detail the pleadings of the respective parties and the showings made by them as to why each should be entitled to a summary judgment. It appears from the record that the decedent and the claimant were involved in an automobile accident on December 10, 1951, and it is admitted that as a result of the accident Virgil L. Rathe, driver of one of the cars, was killed. The claimant made no inquiry of the sheriff of Gage County who investigated the accident. An examination of the sheriff's report of the accident filed with the Department of Roads and Irrigation, which is a public record, would have revealed the residence of the decedent. Any due diligence used at the place of the accident would certainly have revealed that the automobile driven by the decedent at the time of the accident was licensed in Johnson County and not in Gage County.

Any inquiry made by claimant to the insurance company which carried coverage on his automobile for liability in case of an accident, or to the insurance adjuster of that company, would have revealed the true residence of the decedent. Any inquiry made in the town of Adams, probably 16 or 18 miles distant from the town of Hickman where the claimant lived, would likewise have revealed the residence of the decedent. The place of decedent's residence was admittedly discovered accidentally.

From the record as we view it, the mistake made by the claimant in not knowing or ascertaining the residence of the decedent was not a mistake that could be excused under the facts and circumstances of this case. It is also apparent that the claimant did not use due diligence in attempting to ascertain the residence of the decedent. The fact that he made inquiry and instituted certain proceedings in the county court of Gage County is not a showing of due diligence in ascertaining the residence of the decedent. We conclude that the claimant failed to show good cause for permission to file the belated claim in the estate proceedings. Having failed to show good cause, judicial discretion of the trial court is not here involved.

We conclude the judgment of the trial court should be, and is hereby, reversed and the cause remanded with directions to enter a summary judgment in favor of the administrator of the estate.

REVERSED AND REMANDED WITH DIRECTIONS.